1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

8    SINAA ABDULWAHAB,                         NO.  C14-920-RAJ-JPD

9                          Plaintiff,

10        v.                                   REPORT AND
                                               RECOMMENDATION
11   CAROLYN W. COLVIN, Acting
     Commissioner of Social Security,
12
                           Defendant.
13

14        Plaintiff Sinaa Abdulwahab appeals the final decision of the Commissioner of the

15   Social Security Administration ("Commissioner") that denied her application for Supplemental

16   Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f,

17   after a hearing before an administrative law judge ("ALJ").  For the reasons set forth below,

18   the Court recommends that the Commissioner's decision be AFFIRMED.

19                    I.        FACTS AND PROCEDURAL HISTORY

20        At the time of the administrative hearing, Plaintiff was a 43-year-old woman who

21   received her college education in Iraq.  Administrative Record ("AR") at 35-36, 148.  Her past

22   work experience includes employment as a teacher in Iraq.  AR at 148.  Plaintiff was last

23   gainfully employed in 2004, before she moved to the United States.  *Id.*

24

REPORT AND RECOMMENDATION - 1

On March 17, 2010, Plaintiff protectively filed a claim for SSI payments, alleging an onset date of July 15, 2008.  AR at 129-37, 153.  Plaintiff asserts that she is disabled due to internal bleeding, hysterectomy, leg-related issues, major depression, and post-traumatic stress disorder ("PTSD").  AR at 147.

The Commissioner denied Plaintiff's claim initially and on reconsideration.  AR at 49-52, 56-59.  Plaintiff requested a hearing, which took place on October 22, 2012.  AR at 32-46.  On November 5, 2012, the ALJ issued a decision finding Plaintiff not disabled and denied benefits based on his finding that Plaintiff had no severe impairments.  AR at 17-27.  Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 1-6, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  On June 21, 2014, Plaintiff timely filed the present action challenging the Commissioner's decision.  Dkt. 1, 3.

## II.    JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*,

REPORT AND RECOMMENDATION - 2

53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.  *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose."  *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).  The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.    EVALUATING DISABILITY

As the claimant, Ms. Abdulwahab bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted).  The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-

99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

V.      DECISION BELOW

On November 5, 2012, the ALJ found:

1.    The claimant has not engaged in substantial gainful activity since March 17, 2010, the application date.

2.    The claimant's affective disorder, anxiety disorder, and personality disorder are medically determinable, but not severe.

3.    The claimant has not been under a disability, as defined in the Act, since March 17, 2010, the date her application was filed.

AR at 19-27.

VI.      ISSUES ON APPEAL

The principal issues on appeal are:

1.     Whether the ALJ erred in discounting Plaintiff's credibility;

2.    Whether the ALJ erred in assessing certain medical opinions; and

3.    Whether the ALJ erred in finding at step two that none of Plaintiff's impairments were severe.

Dkt. 14 at 2.

VII.      DISCUSSION

The ALJ found at step two that although Plaintiff's affective disorder, anxiety disorder, and personality disorder were medically determinable, they were not severe because they did

REPORT AND RECOMMENDATION - 5

not significantly limit her ability to perform basic work activities. AR at 19-27. In making

that finding, the ALJ explained why he discounted the credibility of Plaintiff's subjective

complaints (AR at 21-23), and why he assigned little weight to the opinions of Plaintiff's

treating and examining providers as to the severity of her physical and mental limitations, and

instead gave significant weight to a State agency consultants' opinions (AR at 24-27).

  Plaintiff assigns error to the ALJ's step-two findings, although she does not challenge

the ALJ's finding that her physical conditions were either not medically determinable or not

severe. *See* AR at 24. The Court will address Plaintiff's challenges to the ALJ's adverse

credibility finding, and the ALJ's assessment of certain medical opinions, and then turn to

consider whether, in light of those findings, the ALJ erred in finding that Plaintiff's mental

impairments were not severe.

A. <u>Legal Standards</u>

  At step two, a claimant must make a threshold showing that her medically determinable

impairments significantly limit her ability to perform basic work activities. *See Bowen v.*

*Yuckert*, 482 U.S. 137, 145 (1987); 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work

activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§

404.1521(b), 416.921(b). "An impairment or combination of impairments can be found 'not

severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal

effect on an individual's ability to work.'" *Smolen*, 80 F.3d at 1290 (quoting Social Security

Ruling ("SSR") 85-28, 1985 WL 56856 (Jan. 1, 1985)). A severe mental or physical

impairment must result from anatomical, physiological, or psychological abnormalities which

can be shown by medically acceptable clinical and laboratory diagnostic techniques, and

established by medical evidence consisting of signs, symptoms, and laboratory findings, not

only by the claimant's statement of symptoms. 20 C.F.R. §§ 404.1508, 416.908.

REPORT AND RECOMMENDATION - 6

B.      Credibility

The ALJ discounted the credibility of Plaintiff's subjective statements on the grounds that her self-report was undermined by (1) an investigative report and other medical records[2], (2) the fact that she initially alleged physical limitations and then shifted to allege only mental impairments, and (3) conflicting evidence about her ability to communicate in English.  AR at 23.  Plaintiff argues that these reasons are not clear and convincing, as required in the Ninth Circuit.  *See Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014).  The Court will address each reason in turn.

1.      *Inconsistent Evidence*

The State agency ordered an investigation into Plaintiff's benefits application, after suspecting that Plaintiff had furnished invalid information.  AR at 434.  The matter was referred to the Cooperative Disability Investigations Unit ("CDIU") for further investigation of Plaintiff's allegations.  *See* AR at 200-09.  The CDIU investigators spoke with several of Plaintiff's neighbors (who remained anonymous) and interviewed Plaintiff and her husband inside their home.  AR at 205-09.  The investigators observed that Plaintiff was preparing a meal, and she reported an ability to cook, clean, drive, and shop at Fred Meyer.  AR at 208.  The investigators also observed that Plaintiff had no problem ambulating without an assistive device in her apartment, and that she was able to respond to questions in broken English.  AR at 208-09.

The ALJ found that the behavior observed and statements recorded in the CDIU report contradict Plaintiff's earlier allegations, namely her January 2011 function report.  AR at 22 (citing AR 177-84).  The ALJ noted that Plaintiff's counsel had objected to the admission of

---

[2] Plaintiff does not challenge the ALJ's finding that her medical records contradict her allegations of physical limitations.  AR at 23.

the CDIU report at the hearing on hearsay grounds,[3] but that the objection was overruled.[4]  The ALJ correctly noted that hearsay evidence is admissible in Social Security proceedings.  AR at 22 n.3; *see also Richardson*, 402 U.S. 389; *Manor v. Astrue*, 2011 WL 3563687, at *5 (W.D. Wash. Jul. 28, 2011).

Plaintiff argues in her brief that the CDIU report relied upon the testimony of unsworn and anonymous witnesses, who told investigators that Plaintiff was "nice," "normal," and "not disabled."  Dkt. 14 at 6.  Plaintiff also argues that a witness expressed envy that her family owned two minivans, which is irrelevant to whether she is disabled.  Dkt. 14 at 8 (citing AR at 207).  That may be true, but the ALJ did not rely on those statements for the purposes suggested by Plaintiff.  *See* AR at 22.  The ALJ inferred from the fact that Plaintiff's family had two minivans that Plaintiff was able to drive the second car if her husband had taken the first one to work.  AR at 23.  Plaintiff herself reported to the investigators that she drove and shopped at Fred Meyer.  AR at 208.  Thus, Plaintiff has not identified an error in the ALJ's reliance on the CDIU report on this basis.

Plaintiff also argues that the CDIU report is not actually as contradictory as the ALJ found it to be, because the report does not record observations of Plaintiff's functionality.  Dkt.

---

[3] Plaintiff's brief asserts that counsel objected to the admission of the CDIU report on several grounds, the "key" reason being the lack of opportunity to cross-examine.  Dkt. 14 at 6. This is false, as explained *supra*, note 3.  Plaintiff also suggests that counsel objected on the grounds that the report was not probative, but counsel actually admitted that it was probative at the hearing.  AR at 34-35 ("I think [the report] is probative.").

[4] Plaintiff claims now that she should have had the opportunity to cross-examine or obtain clarification from the investigators, and that the denial of this opportunity should lead the Court to conclude that the ALJ improperly relied on the CDIU report.  Dkt. 14 at 5-6. Plaintiff was notified of the existence of the CDIU report and her right to examine the report before the hearing, and her right to request that the investigators be subpoenaed for cross-examination.  AR at 56, 62, 87, 107.  Plaintiff did not request access to the report or that the investigators be subpoenaed, and her counsel did not object to the CDIU report on the grounds of unavailable cross-examination.  *See* AR at 34-35.  Therefore, any suggestion that Plaintiff was denied an opportunity to cross-examine the investigators must be rejected.

14 at 7-11.  For example, the ALJ noted that the CDIU investigators observed that Plaintiff's

home was nine steps above street level (AR at 22), and Plaintiff argues that there is no

evidence as to how often she climbed the steps and whether they posed any difficulty, and thus

the mere existence of stairs is not probative as to her functionality.  Dkt. 14 at 7-8.  Witnesses

did, however, describe Plaintiff as driving "often" (which would require leaving her home and

thus navigating the nine steps), without evidence of debilitation, which contradicts Plaintiff's

report that she could not "go up stairs."  *Compare* AR at 206-07 *with* AR at 182.

Plaintiff also argues that the fact that her home was observed to be "spotless" does not

mean that she was the one who cleaned it.  Dkt. 14 at 8.  Plaintiff told the investigators,

however, that she cleaned her home (AR at 208), which contradicts her self-report that she

could not do "minimum housework."  AR at 177.

Lastly, Plaintiff contends that the investigators' observations of her mobility do not

contradict her allegations, because she never alleged that she needed to use an assistive device.

Dkt. 14 at 9.  Plaintiff did not report a need for an assistive device, but did report that she could

not walk.  AR at 177.  The investigators' observations thus did contradict Plaintiff's report,

because they observed Plaintiff walking normally in her home.  AR at 208.  The ALJ did not

err in finding that these aspects of the CDIU report contradicted Plaintiff's self-reporting.[5]

The ALJ also noted that observations recorded in treatment notes contradict Plaintiff's

self-reported walking limitations.  AR at 23 (citing AR at 229, 458).  These inconsistencies

further support the ALJ's finding that Plaintiff demonstrated capabilities that exceed her self-

---

[5] Plaintiff contends that the CDIU report is less reliable due to the investigators'
unfounded speculation that Plaintiff may have been working under the table (Dkt. 14 at 10),
but the ALJ did not rely on that portion of the report in discounting Plaintiff's credibility.  AR
at 22-23.  Furthermore, the disputed speculation is not entirely unfounded: the investigators
noted that the administrative record contained a doctor's note excusing Plaintiff from work,
even though Plaintiff reported that she had never worked in the United States.  AR at 200, 221.

1    reported abilities.

2            2.      *Evolving Allegations*

3            The ALJ found that the evolution of Plaintiff's allegations — from a focus on physical

4    complaints to mental complaints — undermined her credibility, because the shift in focus

5    occurred after the CDIU investigation and "appears tailored to the needs of her case."  AR at

6    23.  Plaintiff argues that her shift from physical to mental complaints reflects a change in her

7    medical condition, because her physical condition improved as her doctors expected it to.  Dkt.

8    14 at 11-12.  But Plaintiff reported in January 2011 that she could not walk, even though she

9    testified at the hearing that her walking difficulties existed for about two months after her

10   September 2009 surgery and improved thereafter.  *Compare* AR at 177 *with* AR at 43; *see also*

11   AR at 237 (Plaintiff's November 2009 self-report that she could walk again, after two months

12   of walking difficulties following surgery).  The ALJ did not err in finding that Plaintiff's

13   January 2011 self-report was inconsistent with other reports of her ability to function.

14           3.      *Communication in English*

15           The ALJ found that the record indicated that Plaintiff had more ability to communicate

16   in English than she had reported to the Commissioner and to medical providers.  The ALJ cited

17   Plaintiff's hearing testimony that she speaks only a "[v]ery little bit" of English (AR at 39), as

18   well as her report to a neurologist that she speaks "very limited English" (AR at 218), which he

19   found contradicted by her apparent ability to complete her function report.  AR at 184

20   (indicating that Plaintiff herself completed the form).  Plaintiff argues that someone else

21   (possibly her husband, or possibly someone else who also completed her husband's form)

22   actually completed the form, because the handwriting evident on her form is the same as the

23   handwriting on her husband's form.  AR at 177-92.  Neither the Court nor the ALJ are

24   qualified to analyze handwriting, however, and the Court declines Plaintiff's invitation to

1   speculate as to the authorship of her function report.

2       Even if the ALJ erred in finding that Plaintiff had underreported her ability to

3   communicate in English, this error would be harmless in light of the ALJ's other clear and

4   convincing reasons to discount Plaintiff's credibility. *See Carmickle v. Comm'r of Social Sec.*

5   *Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

6   C.   <u>Medical Evidence</u>

7       Plaintiff challenges the ALJ's assessment of four medical opinions, arguing that the

8   ALJ erred in discounting them and that they establish the severity of her mental impairments.

9   The Court will address each disputed opinion in turn.

10       1.   *Legal Standards*

11       As a matter of law, more weight is given to a treating physician's opinion than to that

12   of a non-treating physician because a treating physician "is employed to cure and has a greater

13   opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751;

14   *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion,

15   however, is not necessarily conclusive as to either a physical condition or the ultimate issue of

16   disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881

17   F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must

18   give clear and convincing reasons for doing so if the opinion is not contradicted by other

19   evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725

20   (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts

21   and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.*

22   (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her

23   conclusions. "He must set forth his own interpretations and explain why they, rather than the

24   doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

REPORT AND RECOMMENDATION - 11

1    Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at

2    725.

3           The opinions of examining physicians are to be given more weight than non-examining

4    physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Like treating physicians, the

5    uncontradicted opinions of examining physicians may not be rejected without clear and

6    convincing evidence. *Id.*  An ALJ may reject the controverted opinions of an examining

7    physician only by providing specific and legitimate reasons that are supported by the record.

8    *Bayliss,* 427 F.3d at 1216.

9           Opinions from non-examining medical sources are to be given less weight than treating

10   or examining doctors. *Lester*, 81 F.3d at 831.  However, an ALJ must always evaluate the

11   opinions from such sources and may not simply ignore them.  In other words, an ALJ must

12   evaluate the opinion of a non-examining source and explain the weight given to it.  SSR 96-6p,

13   1996 WL 374180, at *2 (Jul. 2, 1996).  Although an ALJ generally gives more weight to an

14   examining doctor's opinion than to a non-examining doctor's opinion, a non-examining

15   doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other

16   independent evidence in the record. *Thomas*, 278 F.3d at 957; *Orn*, 495 F.3d at 632-33.

17          2.     *Consultative Psychiatric Examiner David Sandvik, M.D.*

18          Dr. Sandvik examined Plaintiff in September 2010, and diagnosed her with "major

19   depressive episodes," PTSD, and panic disorder with intermittent panic attacks.  AR at 379-81.

20   Dr. Sandvik's medical source statement reads as follows:

21          [Plaintiff's] formal mental status testing was grossly normal except that she
            could not do simple change making with the American money.  There was a
22          marked passive-aggressive and oppositional element to the evaluation.  In this
            country she undertakes almost no social interactions.  She clearly is embittered
23          and traumatized by the war occurring in her home country.  Approaches to her
            psychiatrically should include antidepressant medication, supportive counseling,
24          sleep medication, approaches to help her express her anger and help her adapt

REPORT AND RECOMMENDATION - 12

more productively to her current environment.  It is difficult to imagine that she could perform work activities in any context at this time.  She appears able to manage any funds granted her herself at this time.

AR at 381.  The ALJ assigned little weight to Dr. Sandvik's opinion because Dr. Sandvik himself acknowledged that his objective testing revealed "grossly normal" results, from which the ALJ inferred that Dr. Sandvik's opinions regarding Plaintiff's limitations were based on her non-credible self-report.  AR at 25.  The ALJ also noted that although Plaintiff told Dr. Sandvik that she had no social interaction, and that she does not shop for food, prepare meals, or clean her home, Plaintiff had stated otherwise on other occasions.  AR at 25 (citing, *inter alia*, AR at 208).

Plaintiff argues that the ALJ's reasoning is not legitimate, because Dr. Sandvik also reviewed her medical records, and thus his opinion could have been informed by that review, along with his clinical observations, rather than her self-report.  Dkt. 14 at 16.  Dr. Sandvik did not cite any of Plaintiff's treatment notes as support for his conclusions, however, and does not explain how his observations — of Plaintiff's anger, embittered and oppositional attitude, and passive-aggression — support his conclusion that it is "difficult to imagine" how Plaintiff could work.  AR at 381.  The ALJ did not err in discounting Dr. Sandvik's opinion for lack of objective support.  *See Thomas*, 278 F.3d at 957.

Furthermore, as noted by the ALJ, Plaintiff's report to the CDIU investigators contradicted the description of her activities that she reported to Dr. Sandvik.  Plaintiff reported to the CDIU investigators that she was able to clean, shop, and cook, but denied an ability to do those things during Dr. Sandvik's examination.  *Compare* AR at 208 *with* AR at 379.  This is another legitimate reason to discount Dr. Sandvik's opinion.  *See Calkins v. Astrue*, 384 Fed. Appx. 613, 615  (9th Cir. June 17, 2010) ("[A]n ALJ must be permitted to discount an opinion based principally upon a claimant's self-reporting if the record contains objective evidence that

1   the self-reporting is not credible.").

2        Accordingly, Plaintiff has not established that the ALJ erred in discounting Dr.

3   Sandvik's opinion.

4        3.    *State Agency Consultant Richard S. Winslow, M.D.*

5        Dr. Winslow evaluated the record at the time of the Commissioner's initial

6   determination on Plaintiff's application, and found that certain mental diagnoses would

7   produce some moderate limitations.  AR at 384-401.  The ALJ rejected Dr. Winslow's opinion

8   on the grounds that evidence developed subsequent to Dr. Winslow's review of the record —

9   namely, the CDIU report — undermined the credibility of evidence relied upon by Dr.

10  Winslow.  AR at 25.  Plaintiff argues that the ALJ should not have credited the CDIU report,

11  and that the CDIU report does not actually contradict Dr. Winslow's opinion.  Dkt. 14 at 17.

12       Plaintiff's argument regarding the reliability of the CDIU report should be rejected, for

13  the reasons explained *supra*.  Furthermore, the State agency opinion regarding Plaintiff's

14  diagnoses indicates a reliance on Dr. Sandvik's opinion (AR at 400), and, as explained *supra*,

15  later evidence showed that Plaintiff's self-report to Dr. Sandvik was not accurate.  Thus, the

16  ALJ did not err in rejecting Dr. Winslow's opinion because it was rendered without the benefit

17  of probative evidence developed at a later time.  *See* 20 C.F.R. § 404.1527(c)(3) ("We will

18  evaluate the degree to which [nonexamining sources'] opinions consider all of the pertinent

19  evidence in your claim, including opinions of treating and other examining sources.").

20       4.    *Treating Clinician Mustapha Hydara, ARNP*

21       Plaintiff argues that the ALJ erred in failing to discuss treatment notes written by Mr.

22  Hydara.  Dkt. 14 at 18 (citing AR at 291-94).  The treatment notes referenced by Plaintiff

23  pertain to a July 2010 medication management appointment, where Mr. Hydara adjusted

24  Plaintiff's antidepressant medication.  AR at 291-94.  Mr. Hydara's treatment notes reference

REPORT AND RECOMMENDATION - 14

Plaintiff's depression and PTSD diagnoses, but focus on the management of medication side effects and do not describe functional limitations attributed to Plaintiff's conditions.  AR at 291-92, 299-312.  Plaintiff conclusorily states that Mr. Hydara's treatment notes undermine the ALJ's step-two findings (Dkt. 14 at 18), but does not explain why this is the case.  In the absence of a showing that Mr. Hydara's treatment notes constitute significant evidence probative to the ALJ's disability determination, the Court concludes that the ALJ did not err in failing to discuss the treatment notes.  *See Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (finding that an ALJ is "not required to discuss evidence that is neither significant nor probative").

　　　　　5.　　*Treating Therapist Jenia Kaplan, M.S., LMHC*

　　　　Ms. Kaplan was one of Plaintiff's therapists at Lutheran Community Services Northwest, where Plaintiff first sought treatment in November 2009.  AR at 232.  Ms. Kaplan wrote letters in July 2010 and March 2011, describing Plaintiff's treatment and symptoms, concluding that Plaintiff's "condition significantly limits work related activity and interferes with basic daily functioning."  AR at 232-33, 295-96.

　　　　The ALJ discounted Ms. Kaplan's opinions because (1) she is not an acceptable medical source; and (2) the opinions were inconsistent with Plaintiff's actual activities and functioning, including her ability to prepare food, care for her youngest child, and manage her own household, as demonstrated in the CDIU investigative report.  AR at 26.  Plaintiff argues that these reasons are not sufficient because Ms. Kaplan's status is not relevant, and because the investigative report does not actually contradict Ms. Kaplan's opinions because the activities observed occurred only on one occasion, and mental health conditions fluctuate in severity.  Dkt. 14 at 19.

REPORT AND RECOMMENDATION - 15

1        Ms. Kaplan's status is indeed a legitimate reason to assign less weight to her opinions,

2   as indicated by Ninth Circuit authority. *See Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996)

3   (finding that the regulations permit ALJs "to accord opinions from other sources less weight

4   than opinions from acceptable medical sources").

5        Furthermore, although Plaintiff argues in her briefing that her symptoms fluctuate, and

6   therefore the functioning observed by the CDIU investigators was not representative and could

7   not contradict Ms. Kaplan's opinions, Ms. Kaplan's opinions do not corroborate that assertion.

8   Instead, Ms. Kaplan indicated that Plaintiff required "continuous support" to maintain stability.

9   AR at 233, 295.  Thus, the investigators' report does contradict Ms. Kaplan's opinions,

10  because Plaintiff reported to them that she was a stay-at-home mother, able to cook, clean, and

11  shop (AR at 208); Ms. Kaplan opined that Plaintiff could not make "simple decisions of daily

12  living on her own" (AR at 232, 295) and had difficulty "plan[ning] and execut[ing] simple

13  tasks" (AR at 232, 295).  The ALJ did not err in discounting Ms. Kaplan's opinions in light of

14  this contradictory report of Plaintiff's capabilities. *See Rollins v. Massanari*, 261 F.3d 853,

15  856 (9th Cir. 2001) (affirming an ALJ's rejection of a treating provider's opinion that was

16  inconsistent with the claimant's level of activity).  Accordingly, the ALJ's reasons to discount

17  Ms. Kaplan's opinions are legitimate.

18  D.      Step-Two Findings

19        Plaintiff argues that her own statements, as well as the medical evidence, establish that

20  her mental health impairments were severe. Dkt. 14 at 14-15.  But, as explained *supra*, the

21  ALJ properly discounted both the credibility of Plaintiff's self-reporting as well as the

22  probative value of the disputed medical opinions.  Although the threshold for severity is low,

23  Plaintiff has not shown that the ALJ erred in finding that she did not meet her burden at step

24  two.

1

## VIII.   CONCLUSION

2          For the foregoing reasons, the Court recommends that this case be AFFIRMED.  A

3   proposed order accompanies this Report and Recommendation.

4          Objections to this Report and Recommendation, if any, should be filed with the Clerk

5   and served upon all parties to this suit by no later than **April 30, 2015**.  Failure to file

6   objections within the specified time may affect your right to appeal.  Objections should be

7   noted for consideration on the District Judge's motion calendar for the third Friday after they

8   are filed.  Responses to objections may be filed within **fourteen (14)** days after service of

9   objections.  If no timely objections are filed, the matter will be ready for consideration by the

10  District Judge on **May 1, 2015**.

11         This Report and Recommendation is not an appealable order.  Thus, a notice of appeal

12  seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the

13  assigned District Judge acts on this Report and Recommendation.

14         DATED this 16th day of April, 2015.

15

16  _____

17  JAMES P. DONOHUE
    Chief United States Magistrate Judge

18

19

20

21

22

23

24

REPORT AND RECOMMENDATION - 17